PETER V. YOUNG

 VS No. 8140

LA. CANNING CO.

December 12th, 1921.

*Judge St Paul not having heard the argument takes no part —*

Court of Appeal
PARISH OF ORLEANS
FILED 12/21
Stansbury

8140

PETER V. YOUNG

 VS.

LA. CANNING CO.

No. 8140

CHARLES F. CLAIBORNE, JUDGE.

This is a suit for drayage.

 The plaintiff alleged that five years ago he made a verbal contract for drayage services with Isadore Hechinger the agent of the defendant; that the rate of charges was to be five cents per 100 pounds with a minimum charge of one dollar a load for a single wagon, and of two dollars a load for a double wagon; that he was to pay all ferryage charges and add them to the charge for drayage services; that about July 10th, 1917, he agreed verbally with the defendants that the charge per hundred pounds should be increased to six cents, with a minimum charge of $1.20 for a single wagon loan and $2.40 for a double wagon load; that he has rendered drayage services and has received payments on account in accordance with

> "the itemized statements annexed to the petition which are a chronological compilation of charges entered by him from time to time in his day-book against the defendant for drayage services rendered at the rates and under the conditions mutually agreed upon, as above set forth, together with a statement of the sums paid from time to time by the defendant on account, which sums are duly credited";

that said services are well worth the amount charged therefor; and that there remains due the plaintff a balance of $1127.87 which the defendant refuses to pay.

 The bills annexed consist of entries made day by day from

171

March 2nd, 1917, to August 24th, 1918, and monthly statements for all drayage and for ferry charges, amounting to $2049.82, and a statement of all payments ~~made~~ *received* monthly, on account, from July 16th, 1917 to July 25th, 1918 amounting altogether to $921.95, leaving a balance due of $1,127.87.

The defendants denied owing plaintiff anything; they denied the verbal contract alleged by the plaintiff, and averred that plaintiff having alleged a contract could not recover under a quantum meruit; they averred that they never agreed to the charges set forth in the bills, but accepted them and paid them, believing in error that they were correct; they admit that the ferry charges were properly charged to them, according to custom, but that the plaintiff charged them with the full ferry rates, while he received a discount which he should have allowed, and

"through said erroneous charges respondent has overpaid the correct charges due by it to plaintiff based on a quantum meruit of more than any amount now possibly due by it. It shows that in each ferryage the plaintiff actually paid for a single team round trip 30 and 10-33 cents, while he charged 40 cents and for a double team he paid for each round trip 40 cents, while he charged 80 cents. It shows that this difference, thus overpaid the plaintiff on its bills since it commenced to do drayage for respondent more than exceeds any amount that could possibly be due him under a quantum meruit for the services rendered".

There was judgment for defendants as in case of nonsuit, and plaintiff has appealed.

It will thus be seen that the defendants do not deny the correctness of the amount of drayage charged to them by the plaintiff in his several bills; nor do they deny the correctness of the part payments allowed by the plaintiff. The issue is narrowed down to the correctness of the price charged by the plaintiff, and

to the correctness of the ferryage charges.

On motion of the defendants the plaintiff was ordered to produce in court all his

"commercial books and papers showing the amount of hauling done by him for the defendant, and the charges paid for ferryage on same from February 1914 up to and inclusive of the time when plaintiff ceased to haul for defendant".

Upon the production of these books in Court the defendants asked

"that Mr. Peres, a public accountant, be permitted to investigate these books and make a report to the Court of the amount of ferry charges which have been paid out by plaintiff and also to separate the double from the single team charges, to report the result back to the Court, the fees for the labor to be taxed as costs to be paid by the losing party",

Whereupon

"the Court appointed Mr. E. S. Peres, public accountant, as expert to examine these books and make a report to the Court".

According to the Auditor's report, the books of the plaintiff show that the defendants are indebted to him in the sum of $1120.11. But these books show that the plaintiff charged for ferryage the full price of 40 cents for single teams and 80 cents for double teams.

The Secretary of the Canal Street Ferry Company testified that the cash fare for a single team during the years 1914 to 1918 was as follows:

"Cash fare 20 cents each way. We had ferry tickets, two sets and what was $1, and the other set 33 for $5. That makes it 16 and 2-3 for each dollars set, and 15.33 for the five dollar set. - Charges during that period for

double teams were 40 cents each way; there was no rebate for double teams; tickets or no tickets, it made no difference, it was 40 cents each way".

The accountant reports:

"The total number of single dray loads amounted to 843 loads, representing a saving of .06-2/3 a load or $56.20 if ferry tickets had been purchased".

The plaintiff testified that he had a verbal contract with the defendants to do their hauling at the rates charged by him; that he made the contract in 1914 with Mr. Bentz, representing the defendants; when Mr. Hessinger got in with the defendants they took the hauling away from him and turned it over to the Diamond Transfer Company; then they came back to him and Mr. Hessinger and Mr. Bentz came to him at his office and made a verbal agreement with him; Mr. Bentz has since died; the contract for the increased price was made with Mr. Hessinger *testified that he* over the phone;

Mr. Hessinger is the General Manager of defendant Company; he succeeded Mr. Bentz who died three years ago; he never made any contract with the plaintiff; during the time Mr. Bentz had charge he paid no attention to that part of the business; he never had any phone conversation with the plaintiff ; at various times he made payments to the plaintiff for hauling; the payments were made to the plaintiff on the basis of the bills rendered; generally the bills were paid as presented.

It is evident that Mr. Hessinger did not mean the full import of his testimony, for he certainly had a contract with the plaintiff to do the hauling for the Company. Every time the defendants requested the plaintiff to do some hauling for them, and plaintiff agreed to do it, there was a contract of hauling between them. All Mr. Hessinger could mean was that he had made no contract or agreement for the "price" of the hauling. He may be correct; and yet there might be a contract made by Bentz, at one time manager for the defendants, as sworn to by the plaintiff. Thus there is

174

no conflict between the testimony of these two witnesses.

Plaintiff's testimony is corroborated by all the transactions between the plaintiff and the defendants. The defendants received monthly bills from the plaintiff and made payments in accordance therewith. The Court will not presume that the defendants made monthly payments of detailed bills for five consecutive years without knowing at what rate the hauling was being done; when knowledge of the rate charge once reached them, the continuance of that rate for all future hauling constituted an implied contract between the parties; at any rate it corroborated the testimony of the plaintiff as to the rate originally agreed upon. Nor can we presume that when the defendants originally employed the plaintiff, they did not agree upon a rate. We conclude that the amount of hauling and the contract for the price thereof have been established, and that there is a balance due the plaintiff of $1120.11. 37 A. 871; 123 La. 100.— *33a59.*
*8m 417.*

But the plaintiff must allow the rebates which he received or should have received from the Ferry Company in the shape of tickets, fixed by the accountant at $56.20. 16 A. 239; 18 La. 99; C. C. 3005; 144 La. 818. Story Agency 192, 207, 214. *128 La 399— 2 C.J. 695—*

It is therefore ordered, adjudged, and decreed that the judgment appealed from be reversed and set aside and that the Louisiana Canning Company be condemned to pay to the plaintiff the sum of One thousand and sixty three 91/100 dollars with five per cent per annum interest from November 29th, 1918 till paid and all costs of suit.

December 12th, 1921.